UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEW COLT HOLDING CORPORATION, ET AL. | : | CIVIL ACTION |
| | : | NO. 302-CV-173(PCD) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| RJG HOLDINGS OF FLORIDA, INC., ET AL. | : | |
| | : | |
| Defendants. | : | April 8, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR RECONSIDERATION OF ORDER REGARDING SUMMARY JUDGMENT
AS TO DEFENDANT'S FIRST COUNTERCLAIM**

**INTRODUCTION**

Pursuant to Local Rule 7(c) of the Local Civil Rules of the District of Connecticut, the Defendant, AWA International ("AWA"), submits this memorandum in support of its Motion for Reconsideration of the Court's March 29, 2004 Ruling (the "Ruling"), which denied AWA's Motion for Summary Judgment with respect to its First Counterclaim, and granted Plaintiffs summary judgment over and against AWA with respect to the First Counterclaim.

In brief, movant respectfully submits that under applicable standards and the facts presented, it has standing to bring its claims against the Plaintiffs with respect to their claims that the Colt Cowboy revolver is "Made in the USA," and further that, at a minimum, a question of fact exists regarding whether the claims by Colt's regarding that

1

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

revolver are false and actionable. Thus, it is respectfully requested that the Court reconsider that aspect of its Ruling, and upon such reconsideration, either grant summary judgment to AWA, or (at a minimum) deny Plaintiffs, summary judgment with respect to the First Counterclaim.

## LEGAL STANDARD[1]

A motion for reconsideration may be granted where the motion sets forth matters that the Court may have overlooked that "might reasonably be expected to alter the conclusion reached by the Court." *See Channer v. Brooks*, No. 399CV2564, 2001 WL 1094964, at *1 (D. Conn. Sept. 10, 2001) (attached hereto). "[T]he function of a motion for reconsideration is to present the Court with an opportunity to correct manifest errors of law or fact, or to consider newly discovered evidence." *Id.* Upon such reconsideration, the Court is asked to address such law and fact.

## ARGUMENT

**I. UNDER SECOND CIRCUIT LAW, AWA, A SELLER OF COMPETING PRODUCTS, HAS STANDING TO CHALLENGE COLT'S CLAIMS.**

Defendant submits that in contrast the conclusion in the Ruling (p. 65), AWA has standing to bring its claims that Colt's falsely claimed from 1999 until at least 2003 that its "Colt Cowboy" revolver was "Made in the USA." As noted by one commentator, "standing will ordinarily be almost automatic if the parties are competitors and the advertising has a tendency to mislead some consumers." 4 *McCarthy on Trademarks*

2

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*and Unfair Competition* §27:31 (4th ed.); citing *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 216 U.S.P.Q. 272 (2d Cir. 1982).  Defendant submits that both of these elements have been easily shown.

### A.  **Defendant Was Colt's Competitor At The Relevant Time**

AWA presented more than ample evidence to support, if not conclusively establish, that it was a competitor of the Plaintiffs.  Specifically, the Court noted that the AWA sold its first replicas in June of 2000 (Ruling, p. 4), at a time when Colt's promotions claimed that its Cowboy revolver was "Made in the U.S."  *See* Defendant's Exhibits in Support of Summary Judgment, dated April 11, 2003 ("Def. April 11 Exhs."), Exh. 27; 1999 *Gun Digest*, p. 305; 2002 *Gun Digest*, p. 306; 2003 *Gun Digest*, p. 302; *see also* Def. Apr. 11 Exh. 69; 2000 *Gun Digest*, p. 290; and Def. April 11 Exh. 81).  In depositions of Plaintiff's witnesses, Colt's employees conceded that "Made in the US" claims were made in annual firearms publications for which Colt's submitted copy beginning in 1999 (*see* Def. April 11 Exhs., Exh. 14, pp. 47-49, 56-59).  The publisher testified that the misleading, "Made in US" language in those annual "catalog sections" would have originated from Colt's and that Colt's would have an opportunity to edit or correct them.  (*Id.*, Exh. 80, pp. 27-30, 33).  Such claims were repeatedly in firearms annuals in 2000, 2001, 2002 and 2003[2] (*Id.*, Exh. 14., pp. 8, 47-49, 56-59).

---

[1] The Defendant will not burden the court with the standards relating to summary judgment, as they have been fully addressed in the parties' prior submissions.
[2] While Colt's did not publish these annuals, testimony by the publisher reflects that it originated with Colt's initially (April 11 Exhs., Exh. 80, pp. 26-30), Colt's was annually sent the copy with an opportunity to correct any

3

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In addition, in 1999 Colt's published its *1999 Firearm's Buyer's Guide* (*Id.*, Exh. 56). This undeniably promoted the Colt Cowboy using a flag-draped, America-citing advertisement (*see id.*) which, according to the survey commissioned by AWA, led consumers to believe that this revolver was of United States origin. *Id.*, Exh. 78, p. 7 Given that this catalog had only recently been published by Colt's when the AWA revolvers entered the market, this too was a misleading advertisement with which Defendants had to compete.

Given this, AWA demonstrated that Plaintiffs' false assertions about the Colt Cowboy's origin occurred only shortly before and then continued while the American Western Arms revolvers were offered in this market. As such, AWA entered the replica revolver market at a time when the public's perception of the Cowboy revolvers as being "Made in the USA" would negatively impact replica competitors, in that Colt's used this to distinguish such revolvers from the other replica makers, Def. Br. Opp., p. 95; Def. Br. Summ. J., pp. 15-17, especially since Colt's false and misleading claims of U.S. origin continued for many years -- including as recently as 2003 (*see* Def. April 11 Exhs., Exh. 27 (1999 *Gun Digest*, p. 305; 2002 *Gun Digest*, p. 306, 2003 *Gun Digest*, p. 302); Exh. 69: 2000 *Gun Digest*, p. 290); and Exh. 81) Were this not enough, Colt's executives have provided information for articles which claimed that, "the Cowboy is produced entirely in the USA" (April 11 Exhs., Exh. 73) and it was similarly promoted as being

---

errors (*id.*), and Colt's employees testified that they regularly looked to these publications to see what had been written regarding Colt's products (*id.*, Exh. 14).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"without any off-shore components" in company statements cited in articles. (*Id.*, Exh. 74, P3869).

Given the nature of these statements, they are actionable as false designations of origin. *See Sodexho USA, Inc. v. Hotel and Restaurant Employees and Bartenders Union*, 989 F. Supp. 169, 171-172 (D. Conn. 1997) (particular statements of commercial speech disseminated sufficiently to relevant purchasing public to influence consumers to buy defendants' goods may qualify as commercial advertising); *In Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005 (S.D.N.Y. 1994) (holding generally that particular statements of commercial speech may qualify as advertising).

Based upon the evidence presented, this Court found that the parties are competitors during the period from 2000 to the present (Ruling, p. 64), and as noted above, throughout that period Colt's continued to falsely claim an American origin for this revolver. While the Court held the Defendant to a "heightened standard" to demonstrate injury and causation for pre-2000 activities (because Defendants were not in direct competition with Plaintiffs at the time those ads were created (*see* Ruling, p. 64)), AWA respectfully submits that this standard has no support by applicable Second Circuit law. Indeed, given that advertisements in such publications as the *1999 Colt's Firearms Buyers Guide* and in firearms annuals such as *Gun Digest* may be reviewed by consumers in later years, that Defendants were not competing with Colt's when the advertisements from 1998 and 1999 were published is not dispositive, as consumers

5

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

during the period after AWA entered the market would likely see the misleading statements.

Given this, Defendant has clearly shown that the statements at issue with respect to the Colt's Cowboy revolver were made either while the parties were engaged in direct market competition, or occurred sufficiently close to AWA's entry that the impact of Colt's claims would reasonably occur during competition. Given this, it is respectfully submitted that the facts and the law do not warrant the imposition of a different standard for any of the advertisements here, and that because the parties were competitors, AWA has standing to assert these claims.

**B.    Defendant Has Provided More Than Adequate Evidence Of The Significance Of Colt's Claims Of An American Origin**

In addition to the above, AWA submitted evidence that Colt's claim that its Cowboy revolver is of domestic origin is an important consideration to many firearms users. Not only did AWA submit the survey of the polling company (Def. April 11 Exhs., Exh. 78) which was not countered by any Colt's survey, but further confidential testimony by Colt's own representatives was offered regarding this issue.

Despite this evidence, the court found this insufficient because "there is no evidence to suggest that if consumers knew the truth of its origin they would cease to care about the revolver's domestic origin and purchase Defendants' foreign produced revolvers." Ruling, p. 65. In reaching that decision, the Court cited to *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116 (2d Cir. 2000), where the Second Circuit

6

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

denied standing to a Cuban rum producer in an action brought against an American seller for falsely implying that its rum was Cuban because the Cuban producer could not, due to the U.S.-Cuba embargo, legally *sell* any rum in the United States. *Id.* Significantly, however, *Havana Club* continued that "*any* rum producer *selling its product in the United States* can obtain standing to complain about Bacardi's allegedly false designation of origin as long as it can demonstrate the commercial injury required for an action under section 43(a)." *Havana*, 203 F.3d 116, 134 (emphasis added); *see also Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164 (3d Cir. 2001) (denying standing to Russian vodka producer solely because Russian company did not *sell* products in United States).

AWA respectfully submits that the case cited by the Court *supports,* rather than undermines, AWA's entitlement to bring this action. It is undisputed that AWA did, in fact, sell its revolvers in the United States. Colt's false claims of a domestic origin for the Cowboy had the tendency, and would appear designed, to distinguish Colt's product from the revolvers of competitors which admittedly were manufactured overseas. As such, whether AWA's revolvers were of foreign or domestic origin, Colt's false claims of an American origin for its Cowboy revolver clearly caused harm to its competitors (including AWA), as shown by AWA's survey (Def. Apr. 11 Exhs., Exh. 78, p. 5).

As there is no factual dispute between the parties as to whether the Defendant's products have been marketed and sold in the United States, it is respectfully submitted that summary disposition against AWA based upon this issue was inappropriate. The

7

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Court's conclusion that "Plaintiffs may reap some undue benefit, but at best this injures other manufacturers whose products are manufactured in the U.S. and not the Defendants" misapplies the legal authority existing in the Second Circuit, and ignores the importance of Colt's false efforts to distinguish its products. As the seller of competing products, the Defendant satisfied its standing burden.

## II. EVIDENCE REGARDING THE ORIGIN OF THE COLT COWBOY REVOLVER, IF NOT MANDATING JUDGMENT FOR AWA, AT LEAST CREATED A QUESTION OF FACT.

In *dicta*[3] contained within a footnote (Ruling, p. 65, n. 16), the Court discussed the question of whether Colt's claims of an American origin for the Colt Cowboy revolver were, in fact false. After noting evidence that 12-15% of the manufacturing costs of the revolver were attributable to the parts manufactured overseas (Ruling, p. 65), the Court concluded that at a matter of law, this would sustain a finding that the revolver is made in the United States. *Id.*, p. 65. In fact, AWA respectfully submits that under applicable law and guidance from the Federal Trade Commission ("FTC"), if this amount of foreign content does not mandate a finding for AWA on this issue, at a minimum a question of fact exists as to whether, based upon this content, Colt's could claim that the revolver is "Made in USA."

As the Court noted, the FTC has stated that a seller can only claim that a product is "Made in the USA" if "all or virtually all" of its parts and labor are of U.S. origin. *See*

---

[3] Even though the Court's statements on this point technically are not part of the holding in this case, as this issue is separate and distinct from the basic standing analysis, the Defendants are constrained to address this issue.

8

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Ruling*, p. 65; *see also* April 11 Exh., Exh. 88, at 3. The FTC has made it clear, however, that this is a very high standard: a product can only be claimed to be "Made in the USA" if a *de minimis* amount of its components are of foreign origin. Id. The FTC has further indicated that there is no percentage threshold applicable: instead, an analysis of whether a product is "Made in the USA" includes an examination of the significance of the components and work of foreign origin. *Id*. The Commission has explained that "'All or virtually all' means that all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no -- or negligible — foreign content." "Business Guide; Complying with the Made in the USA Standard," available at http://www.ftc.gov/bcp/conline/pubs/buspubs/madeusa.htm. Thus, for a "Made in the USA" claim to be factually accurate, "all significant parts, processing and labor that go into the product must be of U.S. origin. Products should not contain any -- or only negligible -- foreign content." "FTC Explains 'Made in the USA' Standard to Confirm Consumer Confidence," available at http://www.ftc.gov/bcp/conline/pubs/alerts/usaalrt.htm.[4]

      With this guidance in mind, it is submitted that if AWA's proof did not establish that Colt's claims of U.S.-origin were false as a matter of law, at a minimum a question of fact exists. That an admitted 15%[5] of the costs are attributable to foreign

---

[4] See also http://www.ftc.gov/os/statutes/madeusa/letters/strainer.htm (use of foreign components not de minimis where 18% of the costs were attributable to those parts).

[5] Whether Colt's cost accounting accurately states the actual value of these components is a matter which is reserved for trial.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

components should not result in a conclusion that as a matter of law, this is *de minimis,* especially where, as here, the components constitute the very body of the revolver: the frame, trigger guard, hammer, frontstrap, backstrap, ejector rod, and ejector rod housing. *See* Def. April 11 Exhs, Exh. 58, Request for Admissions Nos. 266-72, 298). While these parts may be finished in the United States, the fact is that, as imported, they are not mere blocks of unprocessed steel, but instead are highly recognizable as the components they will become. *See* Def. 9(c)(1) Statement dated April 11, 2003, p. 21 (citing Colt's responses to AWA's Request for Admissions, 266-272, 298); Def. Apr. 11 Exhs., Exh. 82. Given the significant costs attributable to these components and the nature of the components, it is submitted that one cannot state as a matter of law that "all significant parts, processing and labor that go into the product [are] of U.S. origin," or that these components are merely a *de minimis* portion of the Colt Cowboy revolver.

By the Plaintiff's own public admissions, and through the proof submitted by AWA, significant portions of the Colt Cowboy revolver are of foreign origin. While Defendant strongly contends that this level of content mandates summary judgment in AWA's favor on this issue, at a minimum it is a question of fact whether these components – regardless of the costs Colt's attributes to them – are so insignificant that they can be ignored in whether Colt's can claim to the consuming public that this revolver – unlike most other Single Action Army replicas – is "Made in the USA." It is thus respectfully submitted that the court should reconsider this aspect of its Ruling as well.

10

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## **CONCLUSION**

Based upon the foregoing, it is respectfully submitted that the Court should reconsider its summary dismissal of Count One of AWA's Counterclaims, and upon such reconsideration, either grant Summary Judgment in favor of AWA, or deny Plaintiff's Motion for Summary Judgment.

    Defendant
AWA INTERNATIONAL, INC.

_____
Joseph G. Fortner, Jr.
Fed. Bar #ct04602
Brian D. Rich
Fed Bar #ct24458
HALLORAN & SAGE, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103

11

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

This is to certify that on this 8th day of April, 2004, I hereby mailed a copy of the foregoing to:

Joseph Dieso, Esq.
Colt's Manufacturing Company, Inc.
P.O. Box 1868
Hartford, CT 06144-1868

Robert Shepherd, Esq.
Matthews, Collins, Shepherd & McKay
100 Thanet Circle
Suite 306
Princeton, NJ 08540

John F. Conway, Esq.
Loughlin, Fitzgerald, Kamp, Henrici
Molloy, Rizzo & Reed
150 South Main Street
Wallingford, CT  06492

Robert Gill, Esq.
Saul Ewing LLP
1025 Thomas Jefferson Street, N.W.
Suite 425 West
Washington, DC 20007

_____
Joseph G. Fortner, Jr.

497682.7(HSFP)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105